**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **KRISTEN LAWLER,** | **Case Action: 2:22-cv-02112** |
| Plaintiff, | |
| | **Chief Judge: Algenon L. Marbley** |
| v. | |
| | **Magistrate Judge Jolson** |
| **TRINITY FINANCIAL SERVICES, LLC,** | |
| Defendant. | |

<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to Fed.R.Civ.P. 56(a), Plaintiff Kristen Lawler f/k/a Kristen Allenman (hereinafter, "Ms. Lawler"), respectfully requests this Court grant her summary judgment as to liability on her claims under the Real Estate Settlement Procedures Act (hereinafter, the "RESPA") and the Fair Debt Collections Practices Act (hereinafter, the "FDCPA"). There is no genuine issue of material fact that Defendant Trinity Financial Services, LLC (hereinafter, "Trinity") violated federal law through its handling of the subject mortgage loan.

Ms. Lawler respectfully requests this Court enter summary judgment in her favor, schedule a trial on actual damages, and award Ms. Lawler statutory damages for Trinity's violations of federal law. Ms. Lawler further requests this Court award her reasonable attorney fees and costs upon the submission of a bill of fees and costs to the Court for review. The reasons why this Court should grant the foregoing Motion are set forth in detail in the following Memorandum in Support.

Respectfully Submitted,

KOHL & COOK LAW FIRM, LLC

*/s/ Andrew J. Gerling*
Andrew J. Gerling (0087605)
1900 Bethel Road
Columbus, Ohio 43220
PH (614) 763-5111
FAX (937) 813-67057
andrew@kohlcook.com
*Attorney for Plaintiff*

<u>**MEMORANDUM IN SUPPORT**</u>

I. <u>**INTRODUCTION**</u>

This lawsuit involves a "zombie" second mortgage. According to the Consumer Financial Protection Bureau ("CFPB"), "zombie" mortgages are mortgage debts that consumers thought were forgiven or satisfied long ago but still exist. "What is a zombie second mortgage?" available at *https://www.consumerfinance.gov/ask-cfpb/what-is-a-zombie-second-mortgage-en-2133/.* "The debts may have been written off by the lender and sold for pennies on the dollar to debt collectors." *Id.* The debts have sat for years, often without borrowers ever receiving a mortgage statement. *Id.* Now, years later, and as property values rise, debt collectors are pursuing borrowers on these "smaller" second mortgages. *Id.* That is precisely what happened here.

Ms. Lawler is a hard-working mother of six children. Ms. Lawler was in a contract to sell her home. Ms. Lawler had plans to move with her husband out of state. However, those plans came to a grinding halt when Trinity came out of the woodwork demanding an excessive and exorbitant amount of money on an alleged second mortgage. Ms. Lawler repeatedly tried to get information from Trinity, a company she had never heard of, to move forward with the sale. Trinity refused to cooperate. Ms. Lawler had to retain counsel to seek information about the second mortgage. Even after retaining counsel, Trinity's obstinance continued as it blindly doubled down on its violations of law. It failed to address errors on the account and provide properly requested information under the RESPA. It further made false, misleading, and deceptive communications in connection with the collection of a debt in violation of the FDCPA. Ms. Lawler is entitled to summary judgment as to liability on these claims.

## II.    STATEMENT OF FACTS

The following facts are indisputable:

### a.    Ms. Lawler purchases the home and gets divorced.

On May 24, 2006, Ms. Lawler, and her husband at the time, Paul Alleman (hereinafter, "Mr. Alleman"), entered into an 80/20 loan to purchase the property located at 811 Lone Rise Drive, Marysville, Ohio 43040 (hereinafter, the "Property"). (Declaration of Kristen Lawler ("Lawler Dec.") at ⁋ 8 attached as Exhibit 1.) As part of the transaction, Ms. Lawler and Mr. Alleman financed the Property through SouthStar Funding, LLC (hereinafter, "SouthStar") with a thirty-year adjustable-rate mortgage in the amount of $216,800.00 (hereinafter, the "First Mortgage") as well as a second mortgage in the amount of $54,200.00 at an interest rate of 15.05% secured by a mortgage (hereinafter, the "Second Mortgage"). (*Id*; Exhibit 2; Exhibit 3.) The total amount financed was $271,000.00. (*Id.*)

In 2007, Ms. Lawler filed for divorce from Mr. Alleman. (Lawler Dec. at ⁋ 9.) The divorce was long and contentious. (*Id.*) In 2008, Ms. Lawler received the Property in the divorce. (*Id.*) Unfortunately, during this time, Ms. Lawler experienced financial difficulty. (*Id.*) In 2010, Ms. Lawler entered a loan modification on her mortgage through GMAC Mortgage, LLC (hereinafter, the "Loan Modification"). (*Id.* at ⁋ 10; Exhibit 4.) The Loan Modification had a principal balance of $286,332.66. (*Id.*) Because the principal balance exceeded the total original amount financed, Ms. Lawler believed the Loan Modification included both the First and Second Mortgage. (Lawler Dec. at ⁋ 10.)

Following the divorce and Loan Modification, Ms. Lawler moved on with her life. In 2020, she remarried. (Lawler Dec. at ⁋ 10.) She worked hard, made sacrifices, and put several of her children through college. (*Id.*) She continued paying on the Loan Modification for years,

building considerable equity in the Property. (*Id.* at ¶ 11.) She remains current to this day. (*Id.* at ¶ 12.) Following the Loan Modification, Ms. Lawler did not receive any periodic statements regarding the Second Mortgage. (*Id.* at ¶ 10.) Ms. Lawler was blissfully unaware of the Second Mortgage. Little did she know Trinity was deliberately waiting in the wings to take Ms. Lawler's hard-earned equity.

### b. Trinity allegedly obtains an interest in the Second Mortgage.

Trinity is an out of state debt collector and mortgage servicer. (Deposition Transcript of Trinity's Corporate Representative David Vo ("Trinity Depo") at 12:20-22; 22:7-10.) Trinity's business model is to purchase second mortgages that have fallen into default. (*Id.* at 11-12.) Trinity claims it originally purchased the Second Mortgage in 2014.[1] (*Id.* at 24:5-8.) Trinity allegedly sold the Second Mortgage to Aspen G, LLC before reacquiring it in August of 2017. (Trinity Depo.: 24:9-14; Trinity's Response to Interrogatories ("ROG") and Request for Production of Documents ("POD") at ROG No. 5 attached as Exhibit 18.) The Second Mortgage was in default when Trinity acquired its rights. (Exhibit 17 at LAWLER 00237.) When Trinity obtained its interest in the Second Mortgage, it did not send Ms. Lawler any mortgage statements. (Trinity Depo.: 29:6-14.) For years, Trinity made no efforts to collect on the Second Mortgage; instead, choosing to allow exorbitant interest and late fees to accumulate against the Property.

### c. Ms. Lawler gets into a contract to sell the Property and Trinity comes out of the woodwork.

In 2021, Ms. Lawler planned to move out of state with her husband. (*Id.*) In July of 2021, Ms. Lawler put the Property up for sale. (*Id.*) In September 2021, she entered into an agreement

---

[1] Trinity's corporate representative testified that he did not know the amount Trinity paid to acquire the Second Mortgage and that he did not believe Trinity kept records of the amount it pays to purchase loans in default. (Trinity Depo. 24-15.)

to sell the Property. (*Id.*) The sale was scheduled to close on October 12, 2021, for a price of $385,000.00. (*Id.*; Exhibit 5.) At the time, Ms. Lawler owed approximately $216,000.00 on the First Mortgage. (*Id.*) After closing costs, Ms. Lawler stood to receive $112,816.27 from the sale of the Property. (*Id.*)

A title search of the Property showed the Second Mortgage as a lien. (Lawler Dec. at ℙ 14; Exhibit 6.) Ms. Lawler was stunned. (Lawler Dec. at ℙ 14.) She had worked for years to gain equity in the Property, faithfully paying on her mortgage. (*Id.*) She was determined to get to the bottom of the issue. (*Id.*)

Ms. Lawler made repeated efforts to obtain information regarding the validity of the Second Mortgage. Ms. Lawler contacted Trinity. (*Id.* at ℙ 15; Exhibit 19.) Initially, Trinity told her it had no interest in the Second Mortgage and directed her to contact FCI Lender Services[2] (hereinafter, "FCI"). (*Id.*) On September 29, 2021, Ms. Lawler called FCI. (*Id.*) FCI told Ms. Lawler it had transferred servicing back to Trinity. (*Id.*) Ms. Lawler immediately contacted Trinity again. (*Id.*) This time Trinity claimed that it was the owner and servicer of the Second Mortgage. (*Id.*) It further requested that Ms. Lawler provide details of the sale before providing a payoff quote. (*Id.*) This only deepened Ms. Lawler's concerns. (*Id.*) She feared Trinity's payoff amount was wholly dependent on the equity she held in the Property. (*Id.*) Ms. Lawler requested a copy of the Second Mortgage documents and as many details as possible. (*Id.*) Trinity did not respond to this request. (*Id.*)

On October 5, 2021, Ms. Lawler, through the title company, requested a payoff from Trinity. (*Id.* at ℙ 16; Trinity Depo.: 18:10-17; Exhibit 7.) On October 7, 2023, Trinity sent Ms. Lawler a payoff quote. (Lawler Dec. at ℙ 16; Trinity Depo.: 18:10-17; Exhibit 8.) The payoff

---

[2] FCI is the servicing agent of Aspen G. (Trinity Depo.: 37:1-17.)

quote demanded $173,902.17 to release the Second Mortgage. (Exhibit 8.) Of that amount,
$114,453.23 was interest and $5,775.84 was for alleged late charges. (*Id.*) Ms. Lawler was
shocked. (Lawler Dec. at ❡ 16.) The interest alone was twice the amount of the original principal
balance. (*Id.*) Worse yet, Ms. Lawler had not received a single statement over the years. (*Id.*) She
had never heard of Trinity and did not know if it had any right to demand such an excessive
amount, if any, to release the Second Mortgage. (*Id.*) The amount Trinity demanded exceeded all
interest Ms. Lawler had in the Property. (Compare Exhibit 8 and Exhibit 5.) (Lawler Dec. at ❡
16.) Ms. Lawler had no choice but to retain counsel to get to the bottom of things. (*Id*. at ❡❡ 16-
17.)

### d.  Ms. Lawler's first formal attempt to obtain information from Trinity.

On October 30, 2021, Ms. Lawler, through counsel, sent Trinity a letter (hereinafter, the
"October Letter"). (Declaration of Anthony Eufinger ("Eufinger Dec.") at ❡ 10 attached as
Exhibit 9; Exhibit 10.) Ms. Lawler incurred $547.38 in attorney fees for the October Letter.
(Eufinger Dec. at ❡ 11; Lawler Dec. at ❡ 17.) In it, Ms. Lawler requested the following
information:

        a)  A full accounting of the alleged Second Mortgage;

        b)  Copies of all periodic statements;

        c)  All notice of servicing transfers;

        d)  All notices of default; and

        e)  A copy of the original mortgage note.

Trinity did not respond to the October Letter.[3] (Eufinger Dec. at ❡ 12; Lawler Dec. at ❡ 18.)

---

[3] Trinity claims it has no record of the October Letter. (Trinity Depo. at 38-40.) However, Ms. Lawler's counsel
addressed the October Letter to a location Trinity has admitted is a valid address. (*Id*.) This is part of a pattern where
Trinity conveniently does not maintain, or produce, documents that are detrimental to its position. (See for example

### e.  Ms. Lawler's second attempt to obtain information from Trinity.

When Trinity failed to respond to the October Letter, Ms. Lawler retained the undersigned counsel. (Lawler Dec. at ⁋ 20.) On February 1, 2022, Ms. Lawler, again through counsel, sent Trinity a letter (hereinafter, the "February Letter"). (Declaration of Andrew Gerling ("Gerling Dec.") at ⁋⁋ 14-15 attached as Exhibit 11; Trinity Depo.: 41:6-12; Exhibit 12.) Ms. Lawler incurred $1,000.00 in sending the February Letter. (Lawler Dec. at ⁋ 20; Gerling Dec. at ⁋ 16.) The February Letter consisted of three parts: (1) a notice of error ("NOE"); (2) a request for information ("RFI"); and (3) a demand for a reinstatement amount and payoff ("Reinstatement and Payoff Demand"). (Exhibit 12.) The NOE identified the following errors with the Second Mortgage:

a)  Trinity's failure to send periodic statements;

b)  Trinity's failure to respond to the October Letter;

c)  Trinity's failure to register as a mortgage servicer with the State of Ohio; and

d)  Trinity's failure to maintain a proper accounting.

(*Id.*) In regard to the RFI, Ms. Lawler requested the following information:

a)  A complete accounting of the Second Mortgage;

b)  A copy of the security instrument;

c)  Copies of all images and versions of the mortgage note;

d)  All servicing notes;

e)  All correspondence sent to Ms. Lawler regarding any alleged default; and

f)  All mortgage statements.

(*Id.*) Also, Ms. Lawler requested a current reinstatement quote as well as a payoff quote. (*Id.*)

---

Trinity Depo. 24-25 where Trinity claims it does not maintain any records showing how much it paid to acquire a loan or, as discussed further below, Trinity fails to provide documents that it certainly has in its possession.)

Finally, and in addition to the February Letter, Ms. Lawler sent a debt validation letter pursuant to the FDCPA (hereinafter, the "Debt Validation Letter"). (Gerling Dec. at ‖‖ 14-15; Exhibit 13.) The Debt Validation Letter specifically instructed Trinity to provide verification of the debt. (Exhibit 13.) Trinity admits it received both the February Letter and the Debt Validation Letter. (Trinity's Response to Request for Admissions ("RFA") No. 9 attached as Exhibit 14.) Trinity received these letters on February 22, 2022. (Exhibit 15[4].) As discussed below, Trinity's response to Ms. Lawler's February Letter was wildly deficient.

**f.  Trinity fails to properly respond to Ms. Lawler's February Letter.**

As an initial matter, Trinity failed to provide a payoff quote within seven days of receipt of the February Letter. (Gerling Dec. at ‖ 17; Lawler Dec. at ‖ 21.) Trinity finally acknowledged receipt of the February Letter on March 1, 2022 (hereinafter, the "Acknowledgement Letter"). (Gerling Dec. at ‖ 18; Exhibit 16.) Trinity did not substantively respond until April 20, 2022[5] (hereinafter, the "Response Letter"). (Gerling Dec. at ‖ 19; Trinity Depo: 50:9-21; 51:15-20; Exhibit 17.)

In addition to its delayed response, Trinity substantively failed to address most of the issues Ms. Lawler identified. (Compare Exhibit 12 and Exhibit 17.) Trinity failed to even acknowledge, let alone address, Ms. Lawler's NOE. (*Id.*; Trinity Depo: 52-54) Instead, Trinity attempted to respond only to the RFI. (*Id.*) However, this too was wildly deficient. (*Id.*) Trinity failed to include any accounting for the Second Mortgage, servicing notes, correspondence, and

---

[4] Pursuant to Fed. R. Evid. 201 the Court can take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determine from sources whose accuracy cannot reasonably be questioned. The tracking number on the certified mail can be verified through the U.S. Post Office's website at *https://tools.usps.com/go/TrackConfirmAction_input*.

[5] Trinity dated its QWR response April 13, 2022. (Exhibit 17.) However, conveniently omitted from its document production is the postdate showing it did not mail its response until April 20, 2022. (Gerling Dec. at ‖ 19; Exhibit 17 at LAWLER 236; Trinity Depo. at 50:9-21; 51:15-20.)

mortgage statements. (Exhibit 17.) Trinity failed to provide a payoff quote and reinstatement.[6] (*Id.*) Trinity failed to provide any information to confirm that it was registered with the State of Ohio to engage in mortgage servicing. (*Id.*) Trinity failed to provide information showing that it could enforce the mortgage note. (*Id.*; See also Trinity Depo.: 64-66.) Trinity failed to identify the date it began servicing the Second Mortgage. (*Id.*) Trinity's Response Letter further generally stated it did "not have [further] information other than what is attached and discussed above." (*Id.*) However, Trinity produced other servicing records as part of this lawsuit and testified these were part of its business records. (Exhibit 21; Trinity Depo.: 18:10-17.)

As to the Debt Validation Letter, Trinity incorporated a previous response from October of 2021. (*Id.* at LAWLER 00242). That letter stated Trinity had "reviewed the information we have about your loan and confirmed that based on our records and the records of SouthStar Funding, LLC, that the debt is valid as described in our correspondence." (*Id.*) However, this conflicted with the documents Trinity provided with its Response Letter. (*Id.*) Those records showed a gap in the chain of title in the promissory note.[7] (*Id.*) Trinity's failure to respond left Ms. Lawler in a state of limbo. A company Ms. Lawler had never heard of was demanding she pay three times the amount of the original loan. (*Id.*) Despite Ms. Lawler's repeated efforts to obtain information, Trinity failed to produce documents showing it could enforce the mortgage note. (*Id.*) The only option left for Ms. Lawler to obtain information on the Second Mortgage was by filing this lawsuit.

---

[6] Trinity's Response letter claims to have provided a reinstatement and payoff quote, but the document provided contained only illegible symbols. (Exhibit 17 at LAWLER 00280-00290; Trinity Depo: 68-69.)

[7] The original mortgage note is payable to SouthStar and contains no indorsements. The documents provided by Trinity contain three allonges. (1) SouthStar to Wilmington Trust; (2) Trinity to Aspen G; (3) Aspen G to Trinity. (Exhibit 17 at LAWLER 00256-00258.) Trinity's response showed a gap as there was no allonge transferring the mortgage note from Wilmington Trust to Trinity. (*Id.*) This is consistent with documents Ms. Lawler received in response to a subpoena to Aspen G. (Exhibit 20.) Those documents also do not contain an allonge from Wilmington to Trinity. (*Id.*) Aspen G's notes from June 2, 2015, state "[w]e are still missing a link in allonge chain going from Wilmington Trust/Greenwhich to Trinity, but per Mindy's exception report dated 6/3/15, this is in progress." (*Id.*)

**g. Ms. Lawler has suffered dearly and had to put her life on pause due to Trinity's actions.**

For the past two years, Ms. Lawler's life has been on hold. Ms. Lawler has not been able to sell the Property. (Lawler Dec. at ¶ 22.) Ms. Lawler has not been able to move with her husband. (*Id*.) As a direct and proximate result of Trinity's actions and violations of law, Ms. Lawler has suffered significant emotional distress. (*Id.* at ¶¶ 18-23.) There is no disputing any of these facts. Accordingly, Ms. Lawler respectfully requests this Court grant her summary judgment as to liability for Trinity's violations of the RESPA and the FDCPA and schedule a trial to determine her full measure of damages. Ms. Lawler further requests this Court award her attorney fees and costs following the determination of her damages at trial.

## III.    LAW & ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absences of a genuine issue of material fact." *Board of Trustees of Ohio Laborers' Fring Ben. Programs v. World Wide Business Services Corp.,* S.D. Ohio No. 2:12-cv-1105, 2013 WL 559667, *2 (October 11, 2013) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.E.d.2d 265 (1986)). The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Once the moving party has proved that no material fact exists, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Id.* (quoting *Agristor Fin. Corp. v. Van Sickle,* 967 F.3d 233, 236 (6th Cir. 1992)).

###### a. Trinity violated RESPA and Reg. X.

The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq., ("RESPA") is a consumer protection statute that was originally limited to the negotiation and execution of mortgage contracts but expanded in scope in 1990 to encompass loan servicing. (Internal citations omitted.) *Marais v. Chase Home Finance, LLC,* 736 F.3d 711, 719 (6th Cir.). "As a remedial statute, the RESPA is construed broadly to effectuate its purposes." *Id.*

One of the ways the RESPA regulates loan servicing is by providing borrowers with a mechanism to request information and raise concerns related to the servicing of loans. Borrowers may do so by submitting a qualified written request ("QWR"). 12 U.S.C. § 2605(e). A QWR is a written correspondence that includes "the name and account of the borrower" and a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower[.]" 12 U.S.C. § 2605(e)(1)(B). A servicer must acknowledge receipt of a QWR within five business days and substantively respond within thirty business days. 12 U.S.C. § 2605(e)(2).

Regulation X further distinguishes a servicer's obligations in responding to a notice of error and a request for information. 12 12 C.F.R. § 1024.35-36. Upon receipt of a notice of error a servicer must respond by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction [and] the effective date of the correction…; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination [and] information regarding how the borrower can request such documents…

12 C.F.R. § 1024.35(e)(1)(i).

Upon receipt of a request for information, a servicer must respond by either:

(A) Providing the borrower with the requested information…; or

(B) Conducting a reasonable search for the requested information *and* provide the borrower with written notification that states that the servicer has determined that the requested information is not available to the servicer [and] provides the basis for the servicer's determination…"

(Emphasis added) 12 C.F.R. § 1024.36 at (d)(1)(i)-(ii). The official commentary provides that information is not available if "it is not in the servicer's control" or it "cannot be retrieved in the ordinary course of business through reasonable efforts." Further, Regulation X imposes a duty on servicers to maintain policies and procedures to facilitate the transfer of information during servicing transfers. 12 C.F.R. § 1024.38(b)(4). Specifically, it must enable a transferee servicer to "identify necessary documents or information that may not have been transferred by a transferor servicer and obtain documents from the transferor servicer." *Id.* at (b)(4)(ii).

Where a servicer fails to comply with the RESPA, it is liable to a borrower in an amount equal to the sum of:

1. Any actual damages to the borrower as a result of the failure;

2. Any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the RESPA in an amount not to exceed $2,000.00; and

3. Reasonable attorney fees.

12 U.S.C. § 2605(f)(1); (3).

The first several elements of Ms. Lawler's RESPA claims are easily satisfied. Trinity admits it is a mortgage servicer. (Trinity Depo: 12:20-22.) Ms. Lawler is a borrower. (Lawler Dec. at ¶¶ 6-8.) Both the October and February Letters qualify as QWRs. Each letter contains Ms. Lawler's name, account number, and provide sufficient details regarding errors and requests

for information. The only issue before this Court is the sufficiency of Trinity's response. As discussed below, there is no genuine issue of material fact that Trinity failed to properly respond.

### i. Trinity wholly failed to respond to the October Letter.

The common law "mailbox rules" provide that "evidence that an item was properly addressed and placed in the mail creates a rebuttable presumption that the item was received." *Telerico v. Nationwide Mut. Fire Ins. Co.,* 529 Fed. Appx. 729, 732 (6th Cir. 2013). Here, Ms. Lawler has presented sufficient evidence that Trinity received the October Letter. (Exhibit 9; Exhibit 10.) Ms. Lawler properly addressed the October Letter to a location Trinity acknowledges is an accurate address. (Trinity Depo: 13:8-15; 37-38.) Ms. Lawler, through counsel, placed the October Letter in the mail. (Exhibit 9.) Therefore, Ms. Lawler has satisfied the presumption that Trinity received the October Letter. Trinity admits it did not respond. (Trinity Depo.: 39-40.) Accordingly, Ms. Lawler is entitled to judgment as a matter of law.

### ii. Trinity wholly failed to respond to the NOE in the February Letter.

Here, Trinity admits it received the October Letter. (Exhibit 14 at RFA No. 9.) A simple review of Trinity's Response Letter shows it failed to acknowledge Ms. Lawler's NOE. (Compare Exhibit 12 and Exhibit 17.) Trinity did not correct any errors or notify Ms. Lawler that Trinity determined no error occurred accompanied by a statement of the reasons for its belief that no error occurred. (*Id.*) The title alone of Trinity's Response Letter, "Response to Request for Information," foreshadows the deficiencies of its substantive response. This is a violation of 12 C.F.R. 1024.35(e)(1)(i). There is no disputing these facts. Accordingly, Ms. Lawler is entitled to judgment as a matter of law for Trinity's failure to respond to the NOE.

### iii. Trinity failed to respond to the RFI in the February Letter.

Again, a simple review of Trinity's Response Letter, and accompanying documents,
shows it failed to properly respond to Ms. Lawler's RFI. (Compare Exhibit 12 and Exhibit 17.)
Trinity failed to provide any accounting for the Second Mortgage, servicing notes,
correspondence, and mortgage statements. (*Id.*) Trinity failed to provide a payoff and
reinstatement quote. (*Id.*) Trinity failed to provide any information to confirm that it was
registered with the State of Ohio to engage in mortgage servicing. (*Id.*) Trinity failed to provide
all alonges to the mortgage note. (*Id.*) Trinity failed to identify the date it began servicing the
Second Mortgage. (*Id.*) All of these are violations of 12 C.F.R. § 1024.36.

Trinity's failure to provide properly requested documents is highlighted when compared
to documents it produced during this lawsuit. (Exhibit 21.) Trinity testified that the documents it
produced were business records. (Trinity Depo.: 18:10-17.) Ms. Lawler requested several of
these documents. For example, Trinity produced servicing notes, correspondence, and another
allonge only after being sued. (Exhibit 21.) Trinity was further able to identify the date it began
servicing the Second Mortgage. (Exhibit 18 at ROG No. 5.) Trinity had an obligation to provide
this information. It did not. Accordingly, Ms. Lawler is entitled to judgment as a matter of law
for Trinity's failure to respond to the RFI.

### iv. Ms. Lawler is entitled to actual damages, statutory damages, and attorney fees under the RESPA.

Where a servicer's response to a QWR is deficient, the costs and expenses associated
with sending that QWR become actual damages. *Marais v. Chase Home Finance, LLC,* 24
F.Supp. 3d 712, 727 (S.D. Ohio 2014 (citing and discussing *Marais v. Chase Home Finance,
LLC* 736 F.3d 711). The Sixth Circuit has also long recognized emotional distress damages are

recoverable under RESPA. *Houston v. U.S. Bank Home Mortg. Wisc. Serv.,* 505 F. App'x. 534,
548, fn. 6 (6th Cir. 2012) *Marais,* 736 F.3d 711.

Here, Ms. Lawler has shown adequate evidence to allow this lawsuit to go to trial on the
issue of actual damages. The attorney fees she incurred in sending the October Letter and
February Letter – which are separate and apart from the attorney fees incurred in connection with
this lawsuit - alone satisfy Ms. Lawler's burden. Further, the evidence shows Ms. Lawler
suffered severe emotional distress directly related to Trinity's failure to properly respond to her
QWRs. (Lawler Dec. at ⁋ 18-23.) Courts around the country, and courts in the 6th Circuit, hold
that state tort law requirements do not apply to a determination of actual damages under the
RESPA or the FDCPA. *Davis v. Creditors Interchange Receivable Mtg., LLC,* 585 F.Supp.2d
968, 977 (N.D. Ohio 2008); *McMillen v. Resurgent Capital Services, L.P.,* S.D. Ohio No. 2:13-
cv-00738, 2015 WL 5308236, *11. Ms. Lawler is entitled to have a jury hear her testimony to
show what Trinity has put her through.

Further, Trinity's constant and numerous violations of the RESPA, as outlined in this
Motion, show a pattern or practice of violating the RESPA. Individuals are entitled to recover
statutory damages from a servicer that engaged in a pattern or practice of violating RESPA
and/or Regulation X. 12 U.S.C. § 2605(f)(1)(B); see e.g. *Ploog v. HomeSide Lending, Inc.,* 209
F. Supp. 2d 863, at 868-69 (N.D. Ill. 2002) (five similar violations of the RESPA constitute
pattern or practice). Here, Trinity violated the RESPA well over six times. First, it failed to
acknowledge receipt of the October Letter. Second, it failed to substantively respond to the
October Letter. Third, if failed to acknowledge receipt of the February Letter within five
business days. Fourth, it failed to respond to the February Letter within thirty business days.
Fifth, it failed to respond at all to Ms. Lawler's NOE. Sixth, it failed to provide a multitude of

documents requested in Ms. Lawler's RFI. For the numerous, repeated, and potential future violations constituting a pattern and practice of violating the RESPA and Regulation X by Trinity, Ms. Lawler is entitled to statutory damages of $2,000.00 pursuant to § 2605(f)(1)(B).

### b. Trinity violated the FDCPA.

The FDCPA, 15 U.S.C. § 1962, *et seq.*, is a law enacted to protect consumers from debt collectors. 15 U.S.C. § 1692(g). The Sixth Circuit has noted that the FDCPA is "an extraordinarily broad statute" enacted to address what Congress "considered to be a widespread problem." *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 2012). To recover under the FDCPA, the plaintiff must prove:

> 1) The plaintiff is a consumer;
> 2) The debt at issue is a consumer debt;
> 3) The defendant is a debt collector; and
> 4) The defendant has engaged in unlawful activity.

15 U.S.C. § 1692a-f. *See also Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

The first several elements of Ms. Lawler's FDCPA claim are easily satisfied. Trinity obtained its interest in the Second Mortgage when it was in default. "Debt collector" includes any non-originating debt holder that has treated the debt as if it were in default since the time of acquisition. *Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 362 (6th Cir.2012). "For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is a creditor or debt collector depending on the default status of the debt at the time it was acquired." *Bridge*, 681 F.3d at 359. "The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred." *Id*. citing *Wadlington v. Credit Acceptance Corp*., 76 F.3d 103, 106-8 (6th Cir.1996). Accordingly, Trinity is a debt

collector under the FDCPA. The Second Mortgage was obtained to finance Ms. Lawler's

personal residence. "Debt" is defined as any obligation or alleged obligation to a consumer to

pay money arising out of a transaction in which the money or property is for personal, family, or

household purposes. 15 U.S.C. § 1692a(5). Therefore, the Second Mortgage is a consumer debt.

Finally, Ms. Lawler is an individual allegedly obligated to pay a debt. Under the FDCPA, a

consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. §

1692a(3). The only remaining issue is whether Trinity engaged in conduct prohibited under the

FDCPA. As discussed below, there is no genuine issue of material fact that Trinity violated the

FDCPA.

### i. Trinity violated 15 U.S.C. § 1692e.

Section 1692e prohibits debt collectors from the use of "any false, deceptive, or

misleading representation or means in connection with the collection of any debt." To analyze

FDCPA claims, the 6th Circuit follows the "least sophisticated consumer test." *See e.g., Miller v.*

*Javitch, Block & Rothbone,* 561 F.3d 588, 592 (6th Cir. 2009). "The least sophisticated consumer

test is objective, and asks whether there is a reasonable likelihood that an unsophisticated

consumer who is willing to consider carefully the contents of a communication might yet be

misled by them." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011) citing

*Miller*, 561 F.3d at 592. The standard is "lower than simply examining whether particular

language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.*, 167

F.3d 1052, 1054 (6th Cir.1999). The standard ensures "that the FDCPA protects all consumers,

the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518

F.3d 433, 438 (6th Cir. 2008) (quotation marks and citations omitted). In addition to applying

this standard, the statement must be materially false or misleading to violate 15 U.S.C. 1692e.

*Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323, 326 (6th Cir. 2012). "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.* at 327.

Here, Trinity's Response Letter violated the FDCPA. Trinity falsely stated that it provided all documents it had in its possession regarding the Second Mortgage. (Exhibit 17.) However, Trinity later testified that the documents it produced in discovery were business records. (Trinity Depo.: 18:10-17.) These documents contained additional correspondence, servicing notes, and even an allonge allegedly curing the gap in the chain of title. (Exhibit 21.) Trinity's statement was patently false, and therefore does not even require analysis under the least sophisticated consumer analysis. See *Myles v. Kaman & Cusimano, LLC,* S.D. No. 2:13-cv-01159, 2014 WL 4377854 at *6 (finding that the standard for analysis is irrelevant where a statement is patently false.). Even if analyzed under the least sophisticated consumer standard, Trinity still violated the FDCPA. Any consumer, let alone the least sophisticated, would be misled by the overt statement that Trinity had no other documents. Accordingly, Ms. Lawler is entitled to summary judgment on her FDCPA claim.

### ii. Ms. Lawler is entitled to actual damages, statutory damages, and attorney fees under the FDCPA.

Ms. Lawler's FDCPA damages largely mirror her RESPA damages discussed above and incorporated herein. Moreover, Ms. Lawler relied on Trinity's false statement. Trinity claimed it had no other documents. (Exhibit 17.) The documents Trinity provided in its Response Letter showed it could not enforce the mortgage note. (*Id.*) Ms. Lawler relied on this in not selling the Property before the Second Mortgage was released. (Lawler Dec. at ¶ 22.) Further, Ms. Lawler is entitled to emotional distress damages under the FDCPA. The FDCPA permits recovery of "[a]ctual damages including out-of-pocket expenses incurred, as well as emotional distress

damages." *Grimm v. GPG Processing, LLC,* No. 2:18-cv-1522, 2019 WL 4508921 (S.D. Ohio Sept. 19, 2019) (citing *Rainier v. Law Offices of John D. Clunk Co., L.P.A.,* No. 2:13-cv-1174, 2017 WL 9439263 at *11 (S.D. Ohio Sept. 22, 2017).). Like RESPA, a "plaintiff's testimony may be enough to establish emotional distress damages…" *Id.* (citing *Whaley v. Asset Mgmt. Grp., LLC,* No. 2:15-cv-275, 2016 WL 6134169, *1 (S.D. Ohio Oct. 21, 2016).). Ms. Lawler is entitled to have a jury hear her testimony as to her emotional distress damages. Finally, Ms. Lawler is entitled to statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1682k(a)(1) as well as reasonable attorney fees.

## IV.   <u>CONCLUSION</u>

There is no genuine dispute of material fact that Trinity repeatedly violated the RESPA as well as the FDCPA. Accordingly, Ms. Lawler requests this Court grant this Motion, schedule a trial as to damages, and award her attorney fees after trial following a submission of fees to this Court.

Respectfully Submitted,

KOHL & COOK LAW FIRM, LLC

*/s/ Andrew J. Gerling*
Andrew J. Gerling (0087605)
1900 Bethel Road
Columbus, Ohio 43220
PH (614) 763-5111
FAX (937) 813-67057
andrew@kohlcook.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed via the CM/ECF system, which will send notification to all counsel of record, on November 13, 2023.

*/s/ Andrew J. Gerling*
Andrew J. Gerling (0087605)